1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

WESTERN DIVISION

11

BALTAZAR MALDONADO
QUINTANOR,

12
13

                    Petitioner,

14

          v.

15

SPEARMAN (Warden),

16
17

                    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 14-5570-JLS (DFM)

Final Report and Recommendation of
United States Magistrate Judge

18
19
20
21

          This Final Report and Recommendation is submitted to the Honorable
Josephine L. Staton, United States District Judge, pursuant to the provisions of
28 U.S.C. § 636 and General Order 05-07 of the United States District Court
for the Central District of California.[1]

22

///

23

///

24
25
26
27
28

----

[1] This Final Report and Recommendation has been issued to address
new arguments presented in Petitioner's objections (Dkt. 13; hereinafter
"Objections") to the original Report and Recommendation filed on October
28, 2014 (Dkt. 12). As these changes do not affect the Court's conclusions,
Petitioner was not given an opportunity to file additional objections.

# I.

## PROCEDURAL BACKGROUND

On June 24, 2014, Petitioner Baltazar Maldonado Quintanor ("Petitioner") filed a Petition for a Writ of Habeas Corpus and Petition for Writ of Error Coram Nobis. Dkt. 1 ("Petition").[2] According to the face of the Petition, Petitioner pleaded guilty in Ventura County Superior Court to three counts of committing a lewd act upon a child with various special enhancements. Id. at 1-2. On August 29, 2000, Petitioner was sentenced to 45 years to life in state prison. Id. at 1.

Although Petitioner indicates that he did not file an appeal, the California appellate courts' online database reflects that the California Court of Appeal affirmed the Superior Court's judgment on September 5, 2001, in Case No. B144836. It does not appear that Petitioner filed a petition for review in the California Supreme Court.[3]

Petitioner took no further action to contest his conviction for at least a decade, when he filed a petition for writ of habeas corpus and a writ of error coram nobis in the Ventura County Superior Court. Petition at 3.[4] The Superior Court denied the petition on January 7, 2014. Id. On January 27, 2014, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal in Case No. B253903, which was summarily denied on

---

[2] Petitioner variously states his name as Baltazar Maldonado Quintanor and Baltazar Quintanor Maldonado.

[3] The Court has obtained the information regarding Petitioner's direct appeal from the California Appellate Courts Case Information website, http://appellatecases.courtinfo. gov/search/case.

[4] Petitioner does not indicate when he filed his petition in Ventura County Superior Court.

2

1   February 18, 2014.[5] On March 10, 2014, Petitioner filed a petition for writ of

2   habeas corpus in the California Supreme Court in Case No. S217069, which

3   was summarily denied on May 14, 2014. Id. at 4.

4          Petitioner then filed the Petition now before this Court.[6] Petitioner

5   contends that his guilty plea was induced by duress, menace, deceptive means,

6   and trickery by defense counsel, the prosecutor, and police. Id. at 5.

7          Based on its initial review of the Petition, it appeared to the Court that

8   Petitioner's claims are time-barred. Therefore, on July 25, 2014, the Court

9   ordered Petitioner to show cause why the Petition should not be dismissed

10   with prejudice as untimely filed. Dkt. 7.[7] On August 14, 2014, Petitioner filed a

11   response to this Court's order to show cause. Dkt. 9 ("Response").

12   ///

13   ///

14   ///

15   ///

16

17      [5] Petitioner does not disclose the California Court of Appeal petition in

18   his federal petition; the Court learned of it from the California Appellate
Courts Case Information website, see supra note 2.

19

20      [6] The Petition was initially filed in the Northern District of California,

21   but that court transferred the case to this Court because this is the federal
judicial district in which Petitioner sustained the underlying state conviction.

22   See Dkt. 4.

23      [7] The Ninth Circuit has held that the district court has the authority to

24   raise the statute of limitations sua sponte when untimeliness is apparent on the
face of the petition and, furthermore, to summarily dismiss the petition on that

25   ground pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the

26   United States District Court, so long as the court "provides the petitioner with
adequate notice and an opportunity to respond." Herbst v. Cook, 260 F.3d

27   1039, 1043 (9th Cir. 2001).

28

## II.

## DISCUSSION

**A.   Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year limitations period applies to a federal petition for writ of habeas corpus filed by a person in state custody. See 28 U.S.C. § 2244(d)(1). 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Ordinarily, the starting date of the limitations period is that provided by § 2244(d)(1)(A), that is, the date on which the judgment becomes final after the conclusion of direct review.

4

Because Petitioner did not seek review by the California Supreme Court, his conviction became final 40 days after the California Court of Appeal affirmed his conviction on September 5, 2001. See Cal. R. Ct. 8.500(e) (formerly Cal. R. Ct. 28(e)); Smith v. Duncan, 297 F.3d 809, 812-13 (9th Cir. 2002), overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Therefore, his conviction became final on October 15, 2001.

Petitioner then had one year from the date his judgment became final on October 15, 2001, or until October 15, 2002, to timely file a habeas corpus petition in this Court. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001). Petitioner did not file a petition in this Court until June 24, 2014, or almost 12 years too late. Absent some basis for tolling the limitations period for that amount of time, or some other basis for delaying the commencement of the limitations period, the Petition is untimely by almost 12 years.

**B.**   **Petitioner Is Not Entitled to a Later Trigger Date**

Petitioner contends that he is entitled to a later trigger date of AEDPA's statute of limitations under § 2254(d)(1)(D) because he just recently learned from a "jailhouse" lawyer that he could appeal his alleged illegal sentence. Response at 2. However, Petitioner was aware of the factual predicate of his claims at the time he pleaded guilty in 2000; the fact that he may have just learned of the legal significance of those facts does not entitle him to a later trigger date. See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (noting that limitations period begins to run when a prisoner "knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance"). Petitioner is therefore not entitled to a later trigger date under § 2254(d)(1)(D).

Petitioner also argues that he is entitled to a later trigger date based upon newly articulated constitutional rights established in the Supreme Court's recent rulings in Missouri v. Frye, --- U.S. ---, 132 S. Ct. 1399 (2012) and Lafler

5

1    v. Cooper, --- U.S. ---, 132 S. Ct. 1376 (2012). Response at 2. Under §
2    2254(d)(1)(C), the limitation period runs from "the date on which the
3    constitutional right asserted was initially recognized by the Supreme Court, if
4    the right has been newly recognized by the Supreme Court and made
5    retroactively applicable to cases on collateral review."

6          Petitioner's argument that these two cases established a new
7    constitutional rule has been directly rejected by the Ninth Circuit. In
8    Buenrostro v. United States, 697 F.3d 1137, 1140 (9th Cir. 2012), the Ninth
9    Circuit held that neither Lafler nor Frye decided a new constitutional rule but
10   rather applied the Sixth Amendment right to effective assistance of counsel
11   according to the test articulated in Strickland v. Washington, 466 U.S. 668,
12   686 (1984), and extended to the plea-bargaining context in Hill v. Lockhart,
13   474 U.S. 52 (1985). "Because the Court in Frye and Lafler repeatedly noted its
14   application of an established rule to the underlying facts, these cases did not
15   break new ground or impose a new obligation on the State or Federal
16   Government." Buenrostro, 697 F.3d at 1140. Therefore, Petitioner is not
17   entitled to an alternate start date of the statute of limitations under 28 U.S.C. §
18   2244(d)(1)(C).[8]

19   **C.   Petitioner Is Not Entitled to Statutory Tolling**

20         Under AEDPA, "[t]he time during which a properly filed application for
21   State post-conviction or other collateral review with respect to the pertinent
22   judgment or claim is pending shall not be counted toward any period of

23   _____

24         [8] Even if Frye and Lafler established a newly recognized right and
     therefore triggered a later starting date under section 2254(d)(1)(C), the
25   Petition would still be untimely. Both Frye and Lafler were decided on March
     21, 2012. Thus, Petitioner would have had one year from that date, until
26   March 21, 2013, to file a timely habeas petition in this Court. However,
27   Petitioner did not file his federal petition until June 24, 2014.

28

1  limitation under this subsection." 28 U.S.C. § 2244(d)(2). The entire period of

2  time for a full round of collateral review, from the filing of a first state habeas

3  petition to the time the last state habeas petition is denied, may be deemed

4  "pending" and tolled, so long as the state petitioner proceeds in a hierarchical

5  order from one lower state court to a higher state court. See Carey v. Saffold,

6  536 U.S. 214, 223 (2002). This includes so-called "gap tolling" for the periods

7  of time between such state habeas petitions. Id.

8      Here, the state court judgment became final on October 15, 2001.

9  However, Petitioner did not file his first state habeas petition in the Ventura

10 County Superior Court at least a decade later.[9] Petitioner would therefore not

11 be entitled to any statutory tolling for his state habeas petitions because they

12 were not filed until over a decade after Petitioner's federal filing deadline had

13 already elapsed. See, e.g., Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.

14 2003) (holding that § 2244(d) "does not permit the reinitiation of the

15 limitations period that has ended before the state petition was filed," even if the

16 state petition was timely filed); Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir.

17 2001); Wixom v. Washington, 264 F.3d 894, 898-99 (9th Cir. 2001).

18 **D.    Petitioner Is Not Entitled to Equitable Tolling**

19      In Holland v. Florida, 560 U.S. 631, 648 (2010), the Supreme Court held

20 that AEDPA's one-year limitation period is subject to equitable tolling in

21 appropriate cases. However, in order to be entitled to equitable tolling, the

22 petitioner must show both "(1) that he has been pursuing his rights diligently

23 _____

24      [9] As noted above, Petitioner does not disclose when the Superior Court
   petition was filed, but does reveal that the Superior Court denied the petition
25 on January 7, 2014. See Petition at 3. The Court assumes that the Superior
   Court petition was filed shortly before it was denied. If that assumption is
26 incorrect, Petitioner should so indicate in objections filed to this Report and
27 Recommendation.

28

                                    7

and (2) that some extraordinary circumstance stood in his way" and prevented his timely filing. Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The Ninth Circuit has held that the Pace standard is consistent with the Ninth Circuit's "sparing application of the doctrine of equitable tolling." Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009). Thus, "[t]he petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010) (quoting Ramirez, 571 F.3d at 997). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted). Consequently, as the Ninth Circuit has recognized, equitable tolling will be justified in few cases. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); see also Waldron-Ramsey, 556 F.3d at 1011 ("To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'").

In his Response to the Court's OSC, Petitioner offers two reasons why he could not file a timely petition:  first, his native language is Mixteco and he is unable to read or write English or Spanish; and second, he is a layman who is untrained in the law. Petitioner's Response at 1-2.

Petitioner has not met his burden of showing that this is one of the few cases in which extraordinary circumstances warrant equitable tolling. First, with respect to Petitioner's inability to read and write English, the Ninth Circuit has held that "a non-English-speaking petitioner seeking equitable

8

1  tolling must, at a minimum, demonstrate that during the running of the

2  AEDPA time limitation, he was unable, despite diligent efforts, to procure

3  either legal materials in his own language or translation assistance from an

4  inmate, library personnel, or other source." Mendoza v. Carey, 449 F.3d 1065,

5  1070 (9th Cir. 2006). In Mendoza, the court held that equitable tolling

6  potentially applied where a Spanish-speaking inmate alleged that he "lacks

7  English language ability, was denied access to Spanish-language legal

8  materials, and could not procure the assistance of a translator during the

9  running of the AEDPA limitations period." Id. at 1071. While recognizing that

10  these allegations could establish the requisite extraordinary circumstances, the

11  Court remanded for further review of whether the inmate "exercised the

12  requisite diligence in his search for Spanish-language materials or a willing

13  translator." Id. at 1071 n. 6.

14       Here, Petitioner has provided no reason why he could not have

15  obtained, during the running of the limitations period, either legal materials in

16  his own language or translation assistance from another inmate, library

17  personnel, or some other source. Petitioner has in fact alleged no facts to show

18  that he exercised any diligent efforts to obtain such assistance during not only

19  the limitations period, but the nearly 12 year period that followed before he

20  filed his federal habeas petition. Thus, Petitioner's argument for equitable

21  tolling due to his language barrier fails to establish extraordinary circumstances

22  and is therefore unpersuasive. See United States v. Aguirre–Ganceda, 592 F.3d

23  1043, 1046 (9th Cir. 2010) (rejecting equitable tolling where petitioner with

24  alleged limited English proficiency failed to show diligence in obtaining legal

25  materials in his language or translation assistance).

26       Nor does Petitioner's lack of legal knowledge and training does not

27  entitle him to equitable tolling. It is well-established that a prisoner's

28  educational deficiencies, ignorance of the law, and lack of legal expertise are

9

1  not extraordinary circumstances and therefore do not equitably toll the
2  limitations period. See Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009);
3  Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).[10]

4  **E.    Petitioner's Claim of Actual Innocence Does Not Warrant**
5  **Consideration of His Time-Barred Claims**

6        In his objections to the Court's original Report and Recommendation,
7  Petitioner raises for the first time a claim that he is actually innocent of the
8  underlying offenses and asks the Court to address the merits of his time-barred
9  claims in order to avoid a fundamental miscarriage of justice. Objections at 2.
10 This argument should be rejected.

11       The Ninth Circuit has recognized that "a credible claim of actual
12 innocence constitutes an equitable exception to [the federal habeas] limitations
13 period, and a petitioner who makes such a showing may pass through the
14 Schlup gateway and have his otherwise time-barred claims heard on the
15 merits." Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (en banc).[11]

16

17       [10] In his objections to the Court's original Report and Recommendation,
18 Petitioner argues that he is also entitled to equitable tolling because he could
   not initially speak to other inmates about his case because of the nature of his
19 offense. Objections at 1-2. Petitioner claims that he "had no other [ch]oice" but
20 wait until he was transferred to a "safer facility." Id. at 2. Once he was
   transferred, Petitioner claims he was able to speak to other inmates and file this
21 federal habeas petition. Id. Petitioner says that he asked prison authorities on
22 "several occasions" for such a transfer. Id.

23       Petitioner does not specify when such requests were made or when he
24 was in fact transferred to what he deemed a "safer facility." Nor does he
25 specify why he was unable to investigate his claims without the assistance of
   other inmates. For these reasons, this claim of equitable tolling also fails;
26 Petitioner has not demonstrated either that he pursued his rights diligently or
27 that extraordinary circumstances stood in the way of a timely filing.

28       [11] Under Schlup v. Delo, 513 U.S. 298, 327 (1995), a petitioner's

"To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. The habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." Lee, 653 F.3d at 938 (internal quotations omitted) (citing House v. Bell, 547 U.S. 518, 538 (2006); Carriger, 132 F.3d at 477-78). To pass through the Schlup gateway, a petitioner must show that, in light of all the evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327-28. "This exacting standard permits review only in the extraordinary case, but it does not require absolute certainty about the petitioner's guilt or innocence." Lee, 653 F.3d at 938 (quotations and citations omitted). Rather, "where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the Schlup gateway to allow consideration of otherwise barred claims." Id. (citing Sistrunk v. Armenakis, 292 F.3d 669, 673 (9th Cir. 2002) (en banc)).

Neither Petitioner's objections nor his petition contains any new, reliable evidence that casts doubt on his conviction. Petitioner only makes the claim that his guilty plea was "wrongfully induced" by "duress, menace" and "through deceptive means and trickery." Petition at 5. This entirely conclusory

---

otherwise procedurally-barred claims may be considered on the merits "if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" Carriger v. Stewart, 132 F.3d 463, 477 (9th Cir. 1997) (en banc) (quoting Schlup, 513 U.S. at 315).

11

allegation is insufficient to allow Petitioner to pass through the <u>Schlup</u> gateway to present his time-barred claims. The Court accordingly finds that this is not one of the extraordinary cases meriting review of time-barred claims under the actual innocence/fundamental miscarriage of justice exception. <u>See</u> <u>Lee</u>, 653 F.3d at 938.

## III.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be issued dismissing this action with prejudice.

Dated:  November 20, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge